Markman, J.
**173 This case involves a narrow, but practically consequential, issue: whether plaintiffs gave timely notice of their due-process *541 claims to defendant, the Michigan Unemployment Insurance Agency (the Agency), and therefore are entitled to consideration of the merits of those claims. More specifically, the issue concerns whether plaintiffs filed notices of intention to file their claims or the claims themselves "within 6 months following the happening of the event giving rise to the cause of action." MCL 600.6431(3). We hold that the "happening of the event giving rise to the cause of action" for a claim seeking monetary relief is when the claim accrues, and a procedural-due-process claim seeking monetary relief accrues when the deprivation of life, liberty, or property has occurred. In the instant case, plaintiffs were deprived of their property when their tax refunds were seized or their wages garnished. As a result, plaintiffs Bauserman and Broe timely filed their claims within six months following the deprivation of their property, while plaintiff Williams did not. Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals and remand to that court for further proceedings consistent with this opinion.
I. FACTS AND HISTORY
Plaintiffs are former recipients of unemployment compensation benefits who allege that the Agency unlawfully seized their property without affording due process of law. Plaintiff Bauserman received unemployment compensation from October 2013 through March 2014. In October 2014, the Agency sent Bauserman and his former employer, Eaton Aeroquip (Eaton), **174 a questionnaire regarding suspected unreported earnings that Bauserman received while he was receiving unemployment compensation. Both Bauserman and Eaton responded that Bauserman had not worked for Eaton at the time. On December 3, 2014, the Agency sent Bauserman two notices of redetermination, one claiming that he had received unemployment compensation for which he was ineligible and the other claiming that he had intentionally misled the Agency or concealed information from it to obtain compensation for which he was not eligible. As a result, the Agency informed Bauserman that he owed $ 19,910 in overpayments, penalties, and interest. The next day, Bauserman submitted an online appeal through the Agency's website regarding its assertion that he had committed fraud, but did not submit a separate appeal regarding the Agency's determination that he had received compensation for which he was not eligible.
From January 2015 through June 2015, the Agency sent Bauserman multiple notices stating the amount he owed to the Agency, informing him of missed payments on his debt, and raising the possibility that his wages would be garnished or his tax refunds seized. One of these communications consisted of a "notice of intent to reduce/withhold federal income tax refund," which warned Bauserman that "if you do not pay the amount shown or take other action described below within 60 days of the mail date on this form, the [Agency] will submit this benefit overpayment balance (restitution) to ... the United States Department of Treasury ... [which] will reduce or withhold any federal income tax refund you may be due and will instead forward that amount to the [Agency]." Around this same time, Bauserman sent multiple letters to the Agency attempting to explain the situation, two of which included an attached letter from Eaton explaining **175 that Bauserman received one payment in 2014 for work performed in 2013 but was not employed by Eaton during the time he was receiving unemployment compensation. Finally, on June 16, 2015, the Agency intercepted Bauserman's *542 state and federal income tax refunds.
On September 9, 2015, Bauserman filed a putative class action against the Agency in the Court of Claims, alleging that the Agency had deprived him of his property without providing due process of law. More specifically, he alleged that "Michigan's unemployment fraud detection, collection, and seizure practices fail to comply with minimum due process requirements." On September 30, 2015, the Agency issued two new notices of redetermination, rendering its December 3, 2014 redeterminations "null and void," and the Agency has since returned all monies seized from Bauserman.
On October 19, 2015, Bauserman filed an amended complaint, which added Teddy Broe and Karl Williams as named plaintiffs to the class action. Broe had received unemployment compensation from April 2013 to August 2013, and he had initially been determined eligible on the basis that he had been laid off by his employer, Fifth Third Bank (Fifth Third). However, Fifth Third challenged that determination, alleging that Broe voluntarily terminated his employment to attend school. The Agency then sent requests for information to Broe regarding his eligibility for compensation, and on July 15, 2014, it sent two notices of redetermination to Broe, the first claiming that he had received compensation for which he was ineligible because his termination of employment at Fifth Third "was voluntary and not attributable to the employer," and the second claiming that he had intentionally misled the agency or concealed information from it to **176 obtain compensation that he was not eligible to receive. As a result, the Agency informed Broe that he owed $ 8,302 in overpayments, penalties, and interest.
From August 2014 through April 2015, the Agency sent Broe multiple notices stating the amount owed to the Agency, informing him of missed payments on the debt and raising the possibility that his wages would be garnished or his tax refunds seized. Specifically, on September 2, 2014, the Agency sent Broe a "notice of intent to reduce/withhold federal income tax refund" that was materially identical to the notice provided to Bauserman. In April 2015, Broe sent the Agency a letter appealing its redeterminations and claiming that he had not received the Agency's previous communications because they had been sent to him through his online account with the Agency, which he no longer accessed because he was reemployed and no longer seeking unemployment compensation. The Agency denied the appeal as untimely and, in May 2015, intercepted Broe's state and federal tax refunds. On November 4, 2015, the Agency issued two notices of redetermination, reversing its July 15, 2014 redeterminations that Broe was ineligible for compensation and had committed fraud. The Agency has since returned all monies seized from Broe.
Williams started working at Wingfoot Commercial Tire System in May 2011. When his employment with Wingfoot began, Williams was receiving unemployment compensation from a previous employer. Williams alleges that he advised the Agency that he was now receiving wages from Wingfoot, yet his unemployment compensation had not been altered; Williams believed that he was still entitled to unemployment compensation because his wages from Wingfoot were less than 1½ times his weekly compensation. See **177 MCL 421.48(1). The Agency sent Williams a request to provide information regarding his employment with Wingfoot. On June 22, 2012, the Agency issued redeterminations that (1) terminated Williams's receipt of future unemployment compensation, (2) asserted that he had already received compensation *543 for which he was ineligible due to his employment with Wingfoot, and (3) alleged that he had intentionally misled the Agency or concealed information from it to obtain compensation for which he was not eligible.
On October 29, 2013, the Agency sent Williams a "notice of garnishment" stating that, if the amount owed was not provided to the Agency within 30 days, his "employer [would] be required to deduct and send to [the Agency] up to 25% of [his] disposable earnings each pay period until the debt is paid in full." Williams's wages were first garnished, at the latest, on May 16, 2014,[1] and on May 27, 2014, the Agency sent Williams a "notice of intent to reduce/withhold federal income tax refund" that was materially identical to the notices provided to Bauserman and Broe. Williams sent a letter appealing the Agency's redeterminations on May 22, 2014. The Agency denied Williams's appeal as untimely, as did an administrative law judge. Finally, on February 19, 2015, the Agency seized Williams's federal income tax refund and continues to collect his debt by this means.
Plaintiffs' amended complaint alleges that the Agency violated the class members' due-process rights by (1) depriving them of property without providing adequate notice and an opportunity to be heard and (2)
**178 engaging in unlawful collection practices by, among other things: (a) imposing a higher level of interest than permitted, (b) collecting interest on penalties, and (c) employing wage garnishments. The Agency moved for summary disposition on a number of grounds, including that plaintiffs failed to comply with the notice provision of MCL 600.6431(3) because they had not filed the complaint within six months following the "happening of the event giving rise to the cause of action." The Court of Claims denied the Agency's motion, concluding that plaintiffs' claims accrued when they received the Agency's redetermination notices that rendered its previous fraud findings null and void and that plaintiffs' claims had been filed within six months of that event.[2] The Court of Appeals reversed, concluding that plaintiffs' claims accrued when they received the original redetermination notices alleging fraudulent conduct and explaining the effect that would have on their unemployment compensation. Bauserman v. Unemployment Ins. Agency , unpublished per curiam opinion of the Court of Appeals, issued July 18, 2017 (Docket No. 333181), p. 9.[3] The Court of Appeals reasoned that the hallmark of a due-process claim is inadequate process and therefore that was the "actionable harm" for the purposes of accrual; the subsequent seizing of plaintiffs'
**179 property merely reflected the damage resulting from that deprivation and did not establish the date of accrual. Id . at 10. Plaintiffs thereafter filed an application *544 for leave to appeal in this Court, and we scheduled oral argument on the application, instructing the parties to address
whether "the happening of the event giving rise to [appellants'] cause of action" for the deprivation of property without due process occurred when the appellee issued its allegedly wrongful notice of redetermination, or when the appellee actually seized the appellants' property. MCL 600.6431(3) ; MCL 600.5827 ; cf. Frank v. Linkner , 500 Mich. 133, 149-153, 894 N.W.2d 574 (2017). [ Bauserman v. Unemployment Ins. Agency , 501 Mich. 1047, 909 N.W.2d 268 (2018).]
II. STANDARD OF REVIEW
MCL 600.6431 "establishes conditions precedent for avoiding" governmental immunity. Fairley v. Dep't of Corrections , 497 Mich. 290, 297, 871 N.W.2d 129 (2015). In other words, if a plaintiff fails to comply with MCL 600.6431, his or her claims against a governmental agency are barred by governmental immunity. Id . This Court reviews de novo a lower court's decision to grant summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity. Yono v. Dep't of Transp , 499 Mich. 636, 645, 885 N.W.2d 445 (2016). "When a motion is filed under this subrule, the court must consider not only the pleadings, but also any affidavits, depositions, admissions or documentary evidence that is filed or submitted by the parties." Kerbersky v. Northern Mich. Univ. , 458 Mich. 525, 529, 582 N.W.2d 828 (1998), citing MCR 2.116(G)(5). "Further, whether MCL 600.6431 requires dismissal of a plaintiff's claim for failure to provide the designated notice raises questions of statutory interpretation, which we ... review de novo." McCahan v. Brennan , 492 Mich. 730, 735-736, 822 N.W.2d 747 (2012) (citation omitted).
**180 III. ANALYSIS
A. MCL 600.6431
MCL 600.6431 establishes when and how a claim against a government agency may be initiated:
(1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.
* * *
(3) In all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action . [Emphasis added.]
In McCahan , 492 Mich. at 739, 822 N.W.2d 747, we explained:
Subsection (1) sets forth the general notice required for a party to bring a lawsuit against the state, while subsection (3) sets forth a special timing requirement applicable to a particular subset of those cases-those involving property damage or personal injury. Subsection (3) merely reduces the otherwise applicable one-year deadline to six months. In this regard, subsection (3) is best understood as a subset of the *545 general rules articulated in subsection (1), and those general rules and requirements articulated in subsection (1)-including the bar-to-claims language-continue to apply to all claims brought against the state unless modified by the later-stated specific rules.
**181 The parties agree that plaintiffs' causes of action here are for "property damage or personal injuries,"[4] and therefore plaintiffs' claims are barred unless they filed their complaint or notice of intent to sue "within 6 months following the happening of the event giving rise to the cause of action." MCL 600.6431(3) ; see also McCahan , 492 Mich. at 745, 822 N.W.2d 747.[5]
The question presented concerns how to determine the "event giving rise to the cause of action" for the purpose of triggering the six-month notice period in MCL 600.6431(3). A "cause of action" is defined as "[a]
**182 group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; CLAIM ." Black's Law Dictionary (10th ed.).[6] "Rise" is defined, in relevant part, as "origin, source or beginning," and "give rise to" is defined as "to originate; produce; cause[.]" Random House Dictionary of the English Language (1969); see also People v. McKinley , 496 Mich. 410, 419, 852 N.W.2d 770 (2014) (defining "gives rise to" as "to produce or cause"); Merriam-Webster's Collegiate Dictionary (11th ed.) (defining "rise" as " BEGINNING , ORIGIN "). Put together, an event has "giv[en] rise to the cause of action" when that event "origin[ates]" a "basis for suing" and "entitle[s] one person to obtain a remedy in court." In other words, an "event giv[es] rise to a cause of action" when it *546 triggers a person's ability to obtain a remedy in court.[7] **183 With regard to claims seeking monetary relief, we can identify no meaningful distinction between "the happening of the event giving rise to the cause of action" in MCL 600.6431(3) and when a claim accrues. MCL 600.5827 provides that a "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."[8] We have explained that the date of the "wrong" referred to in MCL 600.5827 is " 'the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty.' " Frank v. Linkner , 500 Mich. 133, 147, 894 N.W.2d 574 (2017) (citation omitted). "The relevant 'harms' for that purpose are the actionable harms alleged in a plaintiff's cause of action." Id . at 150, 894 N.W.2d 574.
We believe that the "actionable harm" we discussed in Frank is the "event giving rise to [a] cause of action" seeking monetary relief under MCL 600.6431(3). The harm that enables a plaintiff to bring an action for monetary relief (i.e., the "actionable harm") necessarily "originates" such a cause of action, and is, thus, "the event giving rise to the cause of action."[9]
*547 As a **184 result, we find that there is no meaningful distinction between "the happening of the event giving rise to [a] cause of action" seeking monetary relief under MCL 600.6431(3) and when such a claim accrues under MCL 600.5827.[10]
B. ACCRUAL OF DUE-PROCESS CLAIM
As in Frank , in this case we are called upon to "determine the date on which plaintiffs first incurred **185 the harm they assert" by looking to the "actionable harms" alleged in plaintiffs' complaint. Frank , 500 Mich. at 150, 894 N.W.2d 574. Plaintiffs allege that the Agency violated their due-process rights under the Michigan Constitution when it (1) seized their property without reasonable notice and an opportunity to be heard and (2) engaged in unlawful collection practices. Thus, the question is at what point plaintiffs first incurred or suffered the "actionable harm" for a claim alleging a violation of predeprivation due process.[11]
The Michigan Constitution provides:
No person shall ... be deprived of life, liberty or property, without due process of law. [
*548 Const. 1963, art. 1, § 17.][12 ]
**186 The Due Process Clause precludes the state from (1) depriving one of life, liberty, or property (2) without due process of law. Clearly, the clause is violated only if there has been a deprivation of life, liberty, or property. Bonner v. City of Brighton , 495 Mich. 209, 225-226, 848 N.W.2d 380 (2014). If there is no such deprivation, no process is "due" and thus no harm has occurred. Williams v. Hofley Mfg. Co. , 430 Mich. 603, 610, 424 N.W.2d 278 (1988) ("It is well established ... that the requirements of procedural due process are triggered only by the implication of protected property or liberty interests. ... It is only when a protected interest has been found that we may proceed to determine what process is due."); see also Fuentes v. Shevin , 407 U.S. 67, 84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("The right to a prior hearing, of course, attaches only to the deprivation of an interest encompassed within the Fourteenth Amendment's protection."). In other words, a plaintiff incurs no harm under the Due Process Clause until and unless he or she incurs a deprivation of property. Thus, the "actionable harm" in a pre-deprivation due-process claim occurs when a plaintiff has been deprived of property, and therefore such a claim "accrues" when a plaintiff has first incurred the deprivation of property.
The Agency argues that, under Carey v. Piphus , 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the **187 lack of process itself constitutes the "actionable harm" and that the deprivation of property is merely a financial consequence or manifestation of that harm. The Agency further notes that the United States Supreme Court held in Carey that one can recover nominal damages for the deprivation of due process even if he or she "did not suffer any other actual injury," id ., and reasons from this that it is the deprivation of process that constitutes the "actionable harm" for a due-process claim, not the deprivation of property.
However, we believe that the Agency misconstrues Carey . The issue in Carey was whether students who were suspended from school without due process could recover damages under 42 U.S.C. 1983.[13] Id . at 248, 98 S.Ct. 1042. The United States Supreme Court previously had held that students possess property and liberty interests in continued education, see Goss v. Lopez , 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and that there was no dispute that the Carey plaintiffs had been deprived of that "property" without due process. The question then was whether, if the plaintiffs' suspensions were justified despite the lack of due process, they could recover damages. Carey , 435 U.S. at 266, 98 S.Ct. 1042. In other words, could the *549 Carey plaintiffs recover damages if they still would have been suspended had they received due process? The Court held:
Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without **188 proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners. [ Id . at 266-267, 98 S.Ct. 1042 (citation omitted).]
Thus, the Court concluded that even if the plaintiffs would have been suspended had they received due process, they could recover nominal damages based on the denial of due process. However, this does not mean that a person can incur "harm" under the Due Process Clause absent a deprivation of property. While a plaintiff can recover damages under the Due Process Clause based solely on the deprivation of due process, no "harm" entitling one to such damages occurs without-- or before-- a deprivation of property. See Bd. of Regents of State Colleges v. Roth , 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.").
The Agency also argues that this Court's recent decision in Frank v. Linkner supports its argument that plaintiffs' claims accrued upon the denial of process, rather than upon the deprivation of property. In Frank , former employees of defendant ePrize brought an action for member oppression within a limited liability company (LLC) under MCL 450.4515, which provides a cause of action for members of an LLC in which the "acts of the managers or members in control of the [LLC] are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the [LLC] or the member." " '[W]illfully unfair and oppressive conduct' means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member."
**189 MCL 450.4515(2). This Court concluded that the plaintiffs' claim accrued before they incurred any calculable financial injury, reasoning:
[T]he actionable harm for a member-oppression claim under MCL 450.4515 consists of actions taken by the managers that "substantially interfere with the interests of the member as a member," and monetary damages constitute just one of many potential remedies for that harm .... Accordingly ... an action for LLC member oppression does not necessarily accrue when a plaintiff incurs a calculable financial injury. Instead, it accrues when a plaintiff incurs the actionable harm under MCL 450.4515, i.e., when defendants' actions allegedly interfered with the interests of a plaintiff as a member, making the plaintiff eligible to receive some form of relief under MCL 450.4515(1). [ Frank , 500 Mich. at 152-153, 894 N.W.2d 574.]
In other words, a calculable financial injury was one potential consequence of the "actionable harm" in an LLC member-oppression claim, but was not in and of itself the "actionable harm." Rather, that harm occurred when "defendants' actions allegedly interfered with the interests of a plaintiff as a member, making the plaintiff eligible to receive some form of relief under MCL 450.4515(1)." Id .
The Agency analogizes this case to Frank , arguing that the deprivation of *550 property is comparable to the calculable financial injury in Frank , i.e., that the deprivation of property is merely the result of the deprivation of process, which constitutes the "actionable harm" for a claim alleging a violation of due process. However, unlike a claim for LLC member oppression under MCL 450.4515 -- in which the harm itself can occur before incurring a calculable financial injury-- no harm for a violation of due process can occur without or before a deprivation of property. Bonner , 495 Mich. at 225-226, 848 N.W.2d 380 ; **190 Williams , 430 Mich. at 610, 424 N.W.2d 278. Indeed, absent such a deprivation, it would often be impossible to determine whether sufficient process had been provided to a person, as the state could provide additional process before the actual deprivation or elect not to deprive that person of property at all, in which case no harm would occur. Thus, while the "actionable harm" in Frank occurred independently from the calculable financial injury, the "actionable harm" in a due-process claim is specifically triggered by a deprivation of property.
Accordingly, the Court of Appeals erred by holding that plaintiffs' due-process claims seeking monetary relief accrued when plaintiffs were deprived of process. Rather, these claims accrued only when they were deprived of property, as they incurred no harm before that deprivation. Because the accrual under MCL 600.5827 of a due-process claim seeking monetary relief "giv[es] rise to [a] cause of action" for purposes of MCL 600.6431(3), the six-month period from MCL 600.6431(3) was triggered when plaintiffs were deprived of property.
C. APPLICATION
Plaintiffs allege that they were first deprived of property when their tax refunds were seized or their wages garnished. The Agency does not dispute that the seizure of tax refunds and garnishment of wages constitute deprivations of property, but argues that plaintiffs were first deprived of property either when the initial redetermination notices were sent informing plaintiffs of liability or, at the latest, when plaintiffs received the Agency's notices of an intention to intercept their tax refunds or wages.[14] However, the Agency **191 provides no support for its argument that either the redetermination notices or the notices of intent actually deprived plaintiffs of their property, rather than merely notifying them of the Agency's future intent to take their property. The Agency's notices of redetermination merely apprised plaintiffs of the amount owed to the Agency; these did not actually seize plaintiffs' property. See Jones v. Clark Co. , 666 Fed.Appx. 483, 486 (6th Cir.2016) ("[Plaintiff] does not have a property interest in not being billed. ... An erroneously high bill from the government, without more, does not deprive the bill's recipient of a protected property interest[.]").[15] Similarly, the notices of intent advised plaintiffs of what the Agency will (at some future time) undertake if a payment is not made, i.e., that a tax refund *551 will be seized or that wages will be garnished, **192 but again these did not actually deprive plaintiffs of their property.[16] See Millar v. Clark Construction Auth. , 501 Mich. 233, 239, 912 N.W.2d 521 (2018) ("At the time each letter was written, the plaintiff had no actionable WPA claim because no allegedly discriminatory action had occurred; the defendants intended to curtail the plaintiff's employment responsibilities, but had not taken any action to implement that intent."). Absent any indication that the Agency's notifications contemporaneously impaired plaintiffs' property interests, we cannot conclude that such notices triggered the "actionable harm" for a claim alleging a violation of due process.[17]
With regard to plaintiff Bauserman, he first incurred a deprivation of property on June 6, 2015, when the Agency intercepted his federal and state income tax refunds. Accordingly, his September 9, 2015 complaint was timely filed "within 6 months following the **193 happening of the event giving rise to the cause of action." MCL 600.6431(3). Similarly, plaintiff Broe first incurred a deprivation of property when his tax refunds were seized in May 2015, and therefore his claim against the Agency was also timely filed under MCL 600.6431(3).[18] However, plaintiff Williams first incurred a deprivation of property when his wages were garnished on May 16, 2014, and his claim was not filed within six months of that deprivation.[19] Thus, plaintiffs Bauserman and Broe timely filed their claims, while plaintiff Williams did not.
IV. CONCLUSION
It is yet to be determined whether plaintiffs will succeed on their claims against *552 the Agency. However, plaintiffs Bauserman and Broe did timely comply with the notice requirements of MCL 600.6431(3) and therefore are not procedurally barred on that basis from the substantive consideration of their claims. We thus affirm in part and reverse in part the judgment of the Court of Appeals and remand to that court for further proceedings consistent with this opinion.[20]
McCormack, C.J., and Zahra, Viviano, Bernstein, and Clement, JJ., concurred with Markman, J.

It is not clear from the record whether Williams's wages had been garnished at any time before May 16, 2014. However, even if his wages were garnished before this time, this would not affect the determination that Williams's claim was not timely filed.

The Court of Claims also held that the return of the funds seized from Bauserman and Broe did not render their claims moot and that plaintiffs were exempt from the requirement that they exhaust their administrative remedies because they raised a facial constitutional challenge to defendant's policies and procedures. Because the Agency has not challenged these holdings in either the Court of Appeals or this Court, we decline to address them.

In the Court of Appeals, the Agency also argued that even if plaintiffs' claims were timely filed, they did not raise viable constitutional tort claims and therefore the claims were barred by governmental immunity on that basis. Because the Court of Appeals found the timeliness issue dispositive, it declined to address this alternative argument.

Because the issue is uncontested, we presume, without deciding, that a claim alleging a violation of due process constitutes an "action[ ] for property damage" that is properly analyzed under MCL 600.6431(3). Compare Sanderson v. Unemployment Ins. Agency , unpublished per curiam opinion of the Court of Appeals, issued August 23, 2018 (Docket No. 338983), p. 3 (holding that a due-process claim based on the deprivation of property constitutes an "action[ ] for property damage" because "it involves a harm to a person's lawful, unrestricted use of property"), with id . at 3 ( Shapiro , J., concurring) (arguing that such a claim does not constitute an "action[ ] for property damage" because "plaintiffs do not seek to recover for damage to property, they simply seek the return of the property").

While McCahan involved a nonconstitutional claim against the state, the Court of Appeals has held that McCahan applies equally to constitutional claims. Rusha v. Dep't of Corrections , 307 Mich. App. 300, 307-314, 859 N.W.2d 735 (2014). However, Rusha recognized an exception to "strict enforcement" of a notice period where one raises a constitutional claim and enforcement of that notice period would "effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right." Id . at 311, 859 N.W.2d 735 (quotation marks and citation omitted). Recently, the Court of Appeals applied this "exception" on the basis of the allegedly "harsh and unreasonable consequences" that would result from enforcement of the notice period in that particular case. Mays v. Governor , 323 Mich. App. 1, 30-35, 916 N.W.2d 227 (2018), application for lv. to appeal pending. Plaintiffs do not argue that McCahan is inapplicable to their claims, nor do they argue that it would be "harsh and unreasonable" to apply the notice period to them in this case. Accordingly, for the purposes of this case, failure to comply with MCL 600.6431(3) would bar plaintiffs' claims against the Agency, and we do not express any opinion regarding whether Rusha and Mays were decided correctly.

"Claim" is relevantly defined as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" and "a demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." Black's Law Dictionary (10th ed.).

The Agency argues that the phrase "giving rise to the cause of action" suggests that the cause of action has not yet fully arisen. We respectfully disagree. Rather, a plaintiff's "cause of action," i.e., a factual situation that entitles one to obtain a remedy in court, does not "begin or originate" until that cause of action actually arises. The Agency appears to argue that the "event giving rise to the cause of action" may occur before the cause of action has fully arisen because an action can set into motion a series of events that eventually provide a plaintiff a cause of action. On this reasoning, any event that eventually leads to a cause of action might "giv[e] rise to the cause of action." To take this case as an example, plaintiffs' initial receipt of unemployment compensation may be argued to have set into motion the series of events that eventually led to their due-process claims. However, such receipt of compensation could hardly be said to have "originated" plaintiffs' causes of action because they could not have obtained a remedy at that juncture. Accordingly, we disagree with the Agency that the event "giving rise to the cause of action" may occur before a plaintiff can obtain a legal remedy in court.

Because the issue is uncontested, we presume, without deciding, that the definition of "accrual" in MCL 600.5827 applies equivalently to MCL 600.6431. But even if we were to apply the common-law definition of "accrual" in this context, this would not alter our conclusion that the "happening of the event giving rise to [plaintiffs'] cause[s] of action" for monetary relief occurred when they were deprived of property. Under the common law, a claim generally accrues "when all of the elements of the cause of action have occurred and can be alleged in a proper complaint." Connelly v. Paul Ruddy's Equip. Repair & Serv. Co , 388 Mich. 146, 150, 200 N.W.2d 70 (1972). Accord Gebhardt v. O'Rourke , 444 Mich. 535, 542, 510 N.W.2d 900 (1994) ; Parish v. B. F. Goodrich Co , 395 Mich. 271, 284, 235 N.W.2d 570 (1975). Here, plaintiffs could assert their due-process claims only when the alleged deprivations had occurred. Thus, it is immaterial for purposes of the instant case whether we apply the definition of "accrual" in § 5827 or from the common law.

There might be some circumstances in which an event would "give rise to the cause of action" before a plaintiff incurs harm. In particular, a plaintiff can sometimes obtain prospective relief, such as declaratory relief under MCR 2.605 or injunctive relief under MCR 3.310, even if no actual harm has yet occurred. Shavers v. Attorney General , 402 Mich. 554, 589, 267 N.W.2d 72 (1978) ("[A] court is not precluded from reaching issues [in a declaratory judgment action] before actual injuries or losses have occurred."); Taxpayers Allied for Constitutional Taxation v. Wayne Co. , 450 Mich. 119, 127, 537 N.W.2d 596 (1995) ("Because a suit for injunctive relief may seek to prevent a future wrong, the cause of action necessarily arises before the wrong occurs."). However, plaintiffs have waived their claims for injunctive and equitable relief, see Appellants' Supplemental Brief at 6 ("The appellants' cause of action is an action for damages based on the deprivation of property without due process."), and none of the parties argues that some event could "give rise" to a claim for prospective relief prior to an event that "gives rise" to monetary relief. Therefore, we need not decide in this case what effect, if any, the availability of a prospective remedy has upon the determination of the "happening of the event giving rise to the cause of action" under MCL 600.6431(3).

In so holding, we recognize that the Legislature used the term "accrue" in Subsection (1), MCL 600.6431(1) ("No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued ...."), but not in Subsection (3), which instead contains the phrase "the happening of the event giving rise to the cause of action," MCL 600.6431(3). Ordinarily, we assign significance to the Legislature's choice of different words. See, e.g., South Dearborn Environmental Improvement Ass'n, Inc. v. Dep't of Environmental Quality , 502 Mich. 349, 369, 917 N.W.2d 603 (2018). Thus, this difference in language suggests that the phrase "happening of the event giving rise to the cause of action" may have a different meaning than "accrue" under Subsection (1). However, the maxim that a difference in language signifies a difference in meaning is a general rule; it may not apply in every situation. See 2A Singer & Singer, Sutherland Statutory Construction (7th ed.), § 46:6, p. 261 ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible .") (emphasis added); Black, Handbook on the Construction and Interpretation of the Laws (St. Paul: West Publishing Co., 1911), p. 145 ("Conversely, where different language is used in the same connection, in different parts of the statute, it is presumed that the legislature intended it to have a different meaning and effect.") (emphasis added). Because the parties agree that plaintiffs' claims are governed by MCL 600.6431(3) rather than MCL 600.6431(1), we need not resolve in this case how to define the term "accrual" in the context of MCL 600.6431(1) or how that definition relates to "the happening of the event giving rise to the cause of action" under MCL 600.6431(3).

The United States Supreme Court has recognized that "[i]n some circumstances ... a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Zinermon v. Burch , 494 U.S. 113, 128, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, plaintiffs aver in their complaint that "[p]ost-deprivation remedies are insufficient to protect claimants' rights to due process because even a temporary deprivation of wages, unemployment benefits, [or] tax refunds creates a substantial burden on claimants who rely upon such income to live and support themselves and their families." Accordingly, plaintiffs allege that postdeprivation process is necessarily insufficient in this case and thus allege further a violation of due process in the procedures employed by the Agency before any deprivation occurred.

Similarly, the United States Constitution provides, "nor shall any state deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const., Am. XIV. Plaintiffs solely allege that the Agency violated Michigan's Due Process Clause. Accordingly, this Court is not bound by federal precedent interpreting the Due Process Clause of the United States Constitution. See People v. Bullock , 440 Mich. 15, 27, 485 N.W.2d 866 (1992) ("This Court alone is the ultimate authority with regard to meaning and application of Michigan law.") However, because of the textual similarities between the state and federal Due Process Clauses, we may nonetheless find persuasive United States Supreme Court cases interpreting the federal Due Process Clause in this context. See People v. Sierb , 456 Mich. 519, 523-524 & n. 10, 581 N.W.2d 219 (1998).

42 U.S.C. 1983 provides a cause of action "to redress deprivations of civil rights by persons acting 'under color of any [state] statute, ordinance, regulation, custom, or usage.' " Hafer v. Melo , 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), quoting 42 U.S.C. 1983 (alteration in original).

The Agency does not argue that plaintiffs possessed a property interest in the continued receipt of future unemployment compensation and therefore we decline to reach that issue. Even assuming that one could have a property interest in the continued receipt of future unemployment compensation, Bauserman and Broe were not seeking additional compensation when the Agency's redeterminations were issued. Accordingly, they were not deprived of any property until their tax refunds were seized.

For example, Bauserman's "notice of redetermination" regarding alleged fraud provided:
Your actions indicate you intentionally misled and/or concealed Information to obtain benefits you were not entitled to receive.
Benefits will be terminated on any claims active on December 28, 2013.
You are disqualified for benefits under MES Act, Sec. 62(b). Restitution is due under MES Act, Sec. 62(a). The wages used to establish your claim are cancelled and no further benefits will be paid based on those wages. In addition, you are required to pay the penalty assessed based on this determination under MES Act, Sec. 54(b)....
* * *
If you disagree with this redetermination, refer to Appeal Rights on the reverse side of this form.

The "notice[s] of intent to reduce/withhold federal income tax refund" provided:
If you do not pay the amount shown or take other action described below within 60 days of the mail date on this form, the [Agency] will submit this benefit overpayment balance (restitution) to ... the United States Department of Treasury ... [which] will reduce or withhold any federal income tax refund you may be due and will instead forward that amount to the [Agency.] [Emphasis added.]

This Court has previously held that it "is beyond dispute that a money judgment rendered in ... litigation against the defendant would deprive it of property." Williams , 430 Mich. at 611, 424 N.W.2d 278. Accordingly, we do not hereby imply that the "actionable harm" in a due-process claim can only occur when collection proceedings begin. However, merely expressing a future intent to deprive one of property is an insufficient triggering event. See Jones , 666 Fed.Appx. at 486 ; Millar , 501 Mich. at 239, 912 N.W.2d 521. Because the notices at issue only reflect a future intent to seize property, and because the Agency has offered no persuasive argument that the notices actually deprived plaintiffs of their property, these did not trigger the six-month notice period under MCL 600.6431(3).

This is true regardless of whether the time elapsed is calculated as ending upon the filing of Bauserman's complaint or upon the filing of the amended complaint on October 19, 2015, which added Broe as a named plaintiff to the action.

Williams's claim was untimely regardless of whether the triggering event was the termination of his receipt of future unemployment compensation or the later garnishment of his wages and interception of his tax refund. Moreover, Williams has not argued that each garnishment of his wages "g[ave] rise to" a new cause of action.

On remand, the Court of Appeals should consider the Agency's argument that it is entitled to summary disposition on the ground that plaintiffs failed to raise cognizable constitutional tort claims.