*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

GRANT BAUSERMAN, KARL WILLIAMS and
TEDDY BROE, on Behalf of Themselves and All
Others Similarly Situated,

       Plaintiffs-Appellees,

v

UNEMPLOYMENT INSURANCE AGENCY,

       Defendant-Appellant.

FOR PUBLICATION
December 5, 2019

No. 333181
Court of Claims
LC No. 15-000202-MM

ON REMAND

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

GADOLA, J. (*concurring*).

I concur with the analysis and reasoning of the majority opinion, given the controlling legal precedent cited in the majority opinion, as applied to the facts alleged in plaintiffs' complaint. I write separately to urge that our Supreme Court revisit the fractured decision in *Smith v Dep't of Pub Health*, 428 Mich 540; 410 NW2d 749 (1987), which recognized the existence of a constitutional tort claim arising under the Michigan Constitution. In particular, the Supreme Court should address more clearly under what circumstances, if any, a judicially-inferred damages remedy is appropriate for violations of the Due Process Clause of the Michigan Constitution. *Id.* at 647 (BOYLE, J., concurring in part).[1]

As an initial matter, I think it somewhat debatable whether the damages issue is even before us on remand. In remanding this case to us, the Supreme Court directed that we "consider the Agency's argument that it is entitled to summary disposition on the ground that plaintiffs

---

[1] The Supreme Court has granted leave to appeal in *Mays v Governor*, 323 Mich App 1; 916 NW2d 277 (2018), lv gtd 503 Mich 1030 (2019). It is hoped that *Mays* will ultimately provide needed clarity with respect to these questions.

failed to raise cognizable constitutional tort claims." *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 193 n 20; 931 NW2d 539 (2019). Whether plaintiffs have a cognizable claim is arguably a more narrow question than whether, if a cognizable claim exists, plaintiffs may recover damages under a judicially-inferred remedy. In other words, this court must first determine whether plaintiffs have made out a constitutional claim before moving on to determine whether they may recover damages for a violation of their constitutional due process rights. In asking us to determine whether plaintiffs raised "cognizable constitutional tort claims," the Supreme Court arguably asked us to examine the first question, but not necessarily the second question, which touches exclusively upon what an appropriate remedy might be for a "cognizable" claim.

The majority opinion concludes that plaintiffs have (1) raised a cognizable constitutional claim, and (2) that they may recover damages for the alleged due process violations. Given the imprecise nature of the instructions on remand I cannot conclude that we are beyond our scope in addressing both questions. Because a tort claim would not generally have much value in the absence of a financial recovery, it is reasonable to conclude that the question of damages is part and parcel of determining whether such a claim is "cognizable."

Under existing precedent, as first laid out in *Smith*, and as more recently articulated in *Mays v Governor*, 323 Mich App 1; 916 NW2d 277 (2018), lv gtd 503 Mich 1030 (2019), plaintiffs appear to have made out a cognizable constitutional claim such that the Agency is not entitled to summary disposition. In particular, with respect to the key question in determining whether plaintiffs have made out a cognizable due process claim, it seems clear that the harms plaintiffs allege result from a "custom or policy" of the defendant Agency. *Smith*, 428 Mich at 648-652 (BOYLE, J., concurring in part). The harms plaintiffs allege resulted from a series of policy decisions and practices the Agency consciously and intentionally adopted over a considerable period of time. Specifically, the Agency instituted the MIDAS system at issue in this case and essentially ceded fraud determinations to that system. One would be hard-pressed to conclude that these decisions and practices were not the result of government policy or custom, and I am unable to do so.

Most unfortunate for our resolution of this case, however, is that the controlling legal precedent, *Smith*, is hopelessly fractured and confused. *Smith* begins with a 2-page memorandum opinion, signed by all six participating Justices, but with an indication that each of its "holdings" is concurred in by "at least" four (unnamed) Justices. Justice Brickley was joined in his opinion by Chief Justice Riley. Justice Boyle authored an opinion concurring in part and dissenting in part, which Justice Cavanagh joined. Justice Levin authored a separate opinion concurring in part, and Justice Archer dissented, joined by Justice Levin. Of the seven enumerated holdings of *Smith*'s memorandum opinion, holdings five and six have specific bearing upon the resolution of this case, and provide:

> 5) Where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action.

> 6) A claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases. [*Id*. at 544.]

-2-

As the majority opinion here articulates, the test long utilized for determining whether damages may be recognized in a particular (i.e., "appropriate") case is set forth in Justice Boyle's opinion in *Smith*. This balancing test has become the standard since it was first expounded in 1987, despite the fact it had the support of only two Justices.

Justice Brickley, on the other hand, joined by Chief Justice Riley, urged caution with respect to whether the judiciary may infer a damages remedy in constitutional tort cases. *Smith*, 428 Mich at 630 (BRICKLEY, J.). I concur in their view that the constitutional separation of powers dictates that the judiciary lacks the power to create such a remedy when the legislature has failed to act.

Toward the end of his lengthy opinion, Justice Brickley analyzed whether the plaintiffs in *Smith* could recover damages for their constitutional tort claims. Justice Brickley begins this analysis with a review of the history of the United States Supreme Court's decision in *Bivens v Six Unknown Named Agents of Fed Bureau of Narcotics*, 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971). In *Bivens*, he noted, the Supreme Court, "for the first time, found an implied right to sue federal officials in federal court for damages on the basis of violations of the federal constitution." *Smith*, 428 Mich at 614 (BRICKLEY, J.). *Bivens* was a Fourth Amendment case, and Justice Brickley pointed out that concurring Justice Harlan "noted that the appropriateness of money damages for other constitutionally protected interests might 'well vary with the nature of the personal interest asserted.' " *Id*., at 614, quoting *Bivens*, 403 US at 408-409 n 9 (HARLAN, J., concurring). Justice Brickley then noted that three Justices dissented in *Bivens*, all on the basis that "the Court should leave to Congress the creation of private causes of action under the constitution." *Smith*, 428 Mich at 614 (BRICKLEY, J.).

Justice Brickley then recounted that in two subsequent decisions, *Davis v Passman*, 442 US 228; 99 S Ct 2264; 60 L Ed 2d 846 (1979), and *Carlson v Green*, 446 US 14; 100 S Ct 1468; 64 L Ed 2d 15 (1980), the Supreme Court extended the scope of the *Bivens* remedy from the search and seizure context of the Fourth Amendment to cases arising under the Fifth and Eighth Amendments, respectively. He pointed out, however, that Justice Rehnquist, "[i]n a lengthy critique of the *Bivens* decision . . . dissented from the Court's opinion in *Carlson*. He argued that the constitution did not confer on the judiciary the power to create private damage remedies under specific constitutional provisions and prohibitions; only the legislature possessed that authority." *Smith*, 428 Mich at 621 (BRICKLEY, J.).

Since its decision in *Carlson*, the Supreme Court has steadily retreated from the *Bivens*, *Davis*, *Carlson* line of cases. Justice Brickley's *Smith* opinion notes that in *Chappell v Wallace*, 462 US 296; 103 S Ct 2362; 76 L Ed 2d 586 (1983), and *Bush v Lucas*, 462 US 367; 103 S Ct 2404; 76 L Ed 2d 648 (1983), "the Supreme Court apparently curtailed the scope of its earlier opinions in *Bivens*, *Davis*, and *Carlson*." *Smith*, 428 Mich at 622 (BRICKLEY, J.), and concluded that, "[b]oth *Chappell* and *Bush* suggest greater caution and increased willingness on the part of the Court to defer to Congress on the question whether to create damages remedies for violations of the federal constitution." *Id*. at 626.

This cabining of *Bivens* continued with the Supreme Court's more recent decision in *Ziglar v Abbasi*, ___ US ___; 137 S Ct 1843, 1857; 198 L Ed 2d 290 (2017), in which the Court refused to recognize a lawsuit for damages brought by a putative class of immigration detainees

suing over the conditions of their confinement following the September 11, 2001 terrorist attacks. In *Ziglar*, the Court detailed a long litany of cases, beginning with *Chappell* and *Bush*, in which it had declined to create an implied damages remedy. *Id*. The Court framed the issue[2] as follows:

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? *Bush*, 462 US at 380, 103 S Ct 2404.

> The answer most often will be Congress. . . . In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if " 'the public interest would be served' " by imposing a " 'new substantive legal liability.' " *Schweiker* [*v Chilicky*, 487 US 412, 426-427; 108 S Ct 2460; 101 L Ed 2d 370 (1988)] . . . The Court's precedents now make clear that a *Bivens* remedy will not be available if there are " 'special factors counselling hesitation in the absence of affirmative action by Congress.' " [*Ziglar*, ___ US ___; 137 S Ct at 1857 (Some internal citations omitted).]

I am constrained to conclude under the existing precedents of *Smith* and *Mays* that plaintiffs have made out a "cognizable claim," and that this is an "appropriate case" for the imposition of damages, given the inability to gain monetary redress of a claimed constitutional violation of this scope in the context of an administrative proceeding.[3] And yet I agree with Justices Brickley and Riley that the scope of the remedy for a violation of the state constitution is fundamentally a policy decision best left to the policy-making branches of our government. I urge our Supreme Court to address the continued vitality of *Smith* in light of the United States Supreme Court's 35-year retrenchment of *Bivens* and its recognition that the judiciary may not be properly suited to infer a damages remedy in the face of constitutional and legislative silence.[4]

---

[2] The United States Supreme Court again will have occasion to define the scope of *Bivens* in November 2019, when it hears argument in *Hernandez v Mesa*, 885 F3d 811 (CA 5, 2018), certiorari gtd in part ___ US ___; 139 S Ct 2636; 204 L Ed 2d 282 (2019).

[3] Caution should be exercised, however, when the remedy for an alleged constitutional violation is sought against a state agency, as it is in this case, as opposed to individual state officials. As Justice Brickley noted in *Smith*, "allowing suits for damages against state agencies for violations of the state constitution does not further the goal of deterrence underlying a *Bivens*-style action." *Smith*, 428 Mich at 630 (BRICKLEY, J.).

[4] Unlike the lead opinion, I would not conclude that the failure of the state constitution to invite legislative action to enforce its due process provision is actually an invitation to the judiciary to infer such a remedy where none previously existed. To the contrary, one might instead argue that the requirement that the Legislature implement the state constitution's equal protection provision suggests that this is the only provision for which the drafters envisioned the creation of a damages remedy, as this would have been thought strictly to be a legislative policy decision. I

-4-

Important considerations such as this should not rest upon a multifactor balancing test devised by just two Justices of our Supreme Court some 32 years ago.

/s/ Michael F. Gadola

---

would further note that just as *Bivens* has been limited and somewhat disfavored since its release in 1971, the United States Supreme Court has also retreated from recognizing implied causes of action for damages when Congress has failed to include them in a statutory remedial scheme. *See Ziglar*, ___ US ___; 137 S Ct at 1857. Out of respect for the policy considerations inherent in creating a damages remedy, and lacking explicit authority to do so, the judiciary is well advised to exercise similar caution in cases arising under the state constitution, and to consider leaving such policy considerations to the policy-making branches of government.