*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAPLE MANOR REHAB CENTER OF WAYNE
and MAPLE MANOR REHAB CENTER OF NOVI,

      Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY and
DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

      Defendants-Appellees.

UNPUBLISHED
March 23, 2023

No. 359235
Court of Claims
LC No. 21-000077-MZ

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

In this declaratory judgment action involving the alleged overpayment of certain taxes under Michigan's Medicare program, plaintiffs Maple Manor Rehab Center of Wayne and Maple Manor Rehab Center of Novi (collectively referred to as "Maple Manor") appeal by right the Court of Claims' opinion and order granting summary disposition in favor of the Department of Health and Human Services (DHHS).[1] We affirm.

---

[1] The Court of Claims' opinion and order also granted summary disposition in favor of the Department of Treasury. We have jurisdiction over Treasury because Maple Manor was "aggrieved" by the Court of Claims' ruling that it lacked subject-matter jurisdiction over Treasury with respect to the QAA and QMI assessments. See MCR 7.203(A). While Treasury has filed an appellee brief arguing that this decision should be affirmed, Maple Manor does not challenge the Court of Claims' decision in this regard and makes no argument regarding Treasury. Because Maple Manor does not contest the decision as to Treasury, we do not consider the substantive merits of the arguments Treasury raises. See *Rohl v Leone*, 258 Mich App 72, 77; 669 NW2d 579 (2003) ("[A]n appeal is limited to the issues raised by the appellant, unless the appellee cross-appeals as provided in MCR 7.207.").

I. BACKGROUND

This is the second case in which Maple Manor, which operates postacute care facilities located in Wayne and Novi, Michigan, challenges the Medicaid Long-Term Care Quality Assurance Assessment (QAA) tax, MCL 333.20161, as well as the Quality Measures Initiative (QMI) tax. As explained in *Maple Manor Rehab Ctr, LLC v Dep't of Treasury*, 333 Mich App 154, 157; 958 NW2d 894 (2020) ("*Maple Manor I*"), as participants in Michigan's Medicare program, Maple Manor is subject to the QAA. This Court explained:

> The QAA is collected in order to secure matching federal funds: MCL 333.20161 and 42 CFR 433.68 provide that the QAA and matching federal funds are to "be used to finance Medicaid nursing home reimbursement payments." MCL 333.20161(11)(a). . . . . The QAA is assessed on the basis of the total number of days of patient care that a nursing home or hospital long-term care unit gives to non-Medicare patients. MCL 333.20161(11)(b). The QAA excludes from assessment the days of care given to residents in assisted living beds and the days of care given to Medicare beneficiaries. See MCL 333.20161(11)(b). To determine the amount due, providers submit annual Medicare cost reports to the . . . [DHHS], which then calculates the facilities' QAA liability. [*Maple Manor I*, 333 Mich App at 157.]

The QMI, in turn, is a subpart of the QAA program and is also used to finance Medicaid nursing home reimbursement payments. Like the QAA, the QMI is assessed on the basis of the total number of days of patient care that a nursing home or hospital long-term care unit gives to non-Medicare patients, MCL 333.20161(11)(b), and a provider's liability for the QMI is assessed by DHHS upon submission of the annual Medicare cost report.

For the October 2018 to September 2019 fiscal year, DHHS initiated the process of determining Maple Manor's QAA and QMI taxes by sending a letter to Maple Manor requesting Maple Manor's 2017 cost report. When Maple Manor failed to respond, DHHS sent another letter six months later, in June 2018, again requesting the cost report, indicating that it was delinquent and that monthly Medicaid payments would be withheld. When DHHS still received no response, it sent another letter the next month, July 2018, providing the same information and again requesting the cost report. In that same month, an auditor of the DHHS e-mailed Maple Manor twice requesting the cost report for the 2017 fiscal year.

Maple Manor eventually responded in July 2018, indicating in a letter that Maple Manor Novi had no Medicaid utilization during the cost report period and that it was submitting this statement in lieu of a cost report.[2] The letter further indicated that Maple Manor Novi's total non-Medicare days were 1,821 days. DHHS, via letter dated July 23, 2018, accepted Maple Manor's

---

[2] The parties dispute when Maple Manor's letter was received, with Maple Manor indicating it was received in May 2018, consistent with the date on the letter, and DHHS indicating it was received in July 2018, consistent with its response to the letter a few days later. The dispute, however, is not material.

request not to file a cost report because Maple Manor provided no Medicaid services during the reporting period.

However, three days later, the DHHS sent Maple Manor a letter requesting that Maple Manor submit a "Certification Statement" and "Statistical Data Worksheets" for purposes of calculating the QAA and QMI. DHHS requested the data no later than August 27, 2018, and indicated that "[p]roviders that do not submit these schedules from its Medicare cost report by this date will have its assessment calculation based on the total facility census (365 days times the number of facility beds)." Maple Manor did not respond to this request.

Consequently, on December 12, 2018, DHHS sent Maple Manor separate QAA and QMI notices of assessment of $26,280 based on Maple Manor's total facility census, i.e., 365 days multiplied by 72, the number of beds. The notices indicated:

> The facility has **until December 22, 2018** to notify this officer in writing of a disagreement with the total number of non-Medicare days of care rendered indicated above. **Failure to respond by December 22, 2018 will result in any changes being made on a prospective basis only.** Please include any pertinent supporting documentation to support the nursing facility's claim for a difference in the number of non-Medicare days of care.

Maple Manor did not respond to these notices of assessment.

Subsequently, on January 11, 2019, the DHHS issued Maple Manor separate QAA and QMI invoices for amounts due in October, November, and December 2018. The QAA invoice reflected a monthly assessment of $8,134 and the QMI invoice reflected a monthly assessment of $917. Eventually, DHHS corrected the QAA and QMI assessments prospectively only for April 1, 2019, onward using the 1,821-day figure that Maple Manor reported. But DHHS declined to retroactively correct the assessments for the period before April 1, 2019.

Maple Manor subsequently filed the instant suit in the Court of Claims, alleging one count for declaratory judgment requesting that the court determine the rights and remedies between the parties.[3] Specifically, Maple Manor sought a retroactive credit adjustment to zero for its QAA and QMI taxes for the period between October 1, 2018, and March 31, 2019, alleging that DHHS levied and imposed erroneous QAA and QMI assessments.

In lieu of answering the complaint, DHHS moved for summary disposition under MCR 2.116(C)(7). DHHS argued that summary disposition was appropriate under this subrule because Maple Manor failed to comply with MCL 600.6431(1) of the Court of Claims Act, MCL 600.6401 *et seq*., which requires a claimant to file a notice of intent to file a claim against the state within one year of the claim's accrual. Maple Manor countered that its complaint was timely because its

---

[3] Maple Manor sought relief in the administrative forum first, but that case was dismissed for lack of jurisdiction. That decision was never appealed to this Court.

claim accrued on April 15, 2019, the date that DHHS corrected Maple Manor's QAA and QMI assessments on a prospective basis only.

Ultimately, the Court of Claims agreed with DHHS and issued a written opinion granting summary disposition in DHHS's favor. The court reasoned:

> Here, plaintiffs allege they submitted an [notice of intent (NOI)] on or about April 15, 2020. In order for this NOI to satisfy MCL 600.6431, plaintiffs' claims must have accrued within one year of the filing of the NOI. The Court agrees with DHHS that plaintiffs' claims accrued more than one year before the filing of the NOI, making the NOI untimely. As noted, a claim accrues at the time the wrong upon which the claim is based was done. *Frank* [*v Linkner*], 500 Mich [133,] 147[; 894 NW2d 574 (2017)]. Here, the "wrong" alleged in the complaint arises from DHHS's December 2018 communications informing plaintiffs of the QAA and QMI assessments. DHHS's December 12, 2018 letter purported to make final plaintiffs' QAA and QMI liability within 10 days of plaintiffs' receipt of the letter. Plaintiffs' amended complaint alleges that the finalization of its QAA and QMI liability is the "harm" that must be redressed. That occurred on December 22, 2018, when plaintiffs failed to challenge the amounts. Plaintiffs' NOI was filed more than 1 year after this occurred, making the NOI untimely.

## II. STANDARD OF REVIEW

The Court of Claims granted summary disposition to DHHS on the basis that Maple Manor failed to comply with the notice requirements of MCL 600.6431(1), but it did not specify under which subrule it granted summary disposition. In reaching this conclusion, the Court of Claims considered facts outside the pleadings. Because the Court of Claims considered facts outside the pleadings and the statute grants the state immunity if Maple Manor fails to comply with the notice requirements, the proper subrule for purposes of this Court's review is MCR 2.116(C)(7). See *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 179; 931 NW2d 539 (2019).

A motion under MCR 2.116(C)(7) may be granted when a claim is barred by immunity. This Court reviews de novo the Court of Claims' decision on a summary disposition motion brought under MCR 2.116(C)(7). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Mays v Governor*, 506 Mich 157, 181; 954 NW2d 139 (2020) (quotation marks and citation omitted). The court must consider any documentary evidence submitted and determine whether there is a genuine issue of material fact. *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id.*

## III. ANALYSIS

On appeal, Maple Manor argues that its complaint was timely under MCL 600.6431(1) and, thus, the Court of Claims erred by granting summary disposition in favor of DHHS. Maple

Manor asserts that its claim accrued on April 15, 2019, the date that DHHS issued letters correcting the QAA and QMI assessments prospectively only. Maple Manor suggests that, because DHHS decided on this date not to apply the correction retroactively, this is the date when the claim accrued and from which to measure the timeliness of its complaint under MCL 600.6431(1).

MCL 600.6431(1) indicates when and how an action may be maintained against the state. The statute provides:

> Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies. [MCL 600.6431(1).]

Under the statute, Maple Manor's claim is barred unless Maple Manor filed its complaint or a notice of intent "within one year after the claim has accrued." MCL 600.6431(1). No dispute exists that Maple Manor filed a notice of intent with the office of the clerk of the Court of Claims on April 15, 2020. Because Maple Manor filed its notice of intent on April 15, 2020, its claim must have accrued within one year before that date, i.e., on or after April 15, 2019, in order for it to be timely under the statute. The parties disagree, however, with respect to when Maple Manor's claim accrued.

For purposes of the MCL 600.6431(1), the Michigan Supreme Court has indicated that "a claim accrues at the time the wrong upon which the claim is based was done . . . [and that] the wrong . . . is the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty[.]" *Mays*, 506 Mich at 182 (quotation marks and citation omitted). A claim does not accrue until each element of a cause of action exists. *Id*. The requisite analysis requires this Court to determine, with these principles in mind, when Maple Manor was "first harmed." See *id*.

In the instant matter, the Court of Claims determined that Maple Manor's claim accrued on December 22, 2018, the date that the QAA and QMI assessments became final. We find no error in this conclusion. There is no factual dispute that DHHS, in July 2018, warned Maple Manor of an adverse assessment, i.e., an assessment based on total facility census rather than actual numbers, in the event that Maple Manor failed to submit a Certification Statement and Statistical Data Worksheet. When Maple Manor did not respond, DHHS, on December 12, 2018, sent Maple Manor separate adverse QAA and QMI notices of assessment. These notices warned that Maple Manor had until December 22, 2018, to notify DHHS of any disagreement regarding the assessment and further, that "**[f]ailure to respond by December 22, 2018 will result in any changes being made on a prospective basis only.**" When Maple Manor did not challenge the amounts by December 22, 2018, the adverse assessments became final with respect to any retroactive correction. Consequently, the date on which the retroactive assessments became final is the date on which the harm occurred and, thus, the date on which Maple Manor's claim accrued. See *Mays*, 506 Mich at 182; see also *Oak Constr Co v Dep't of State Hwys*, 33 Mich App 561, 566-567; 190 NW2d 296 (1971) (indicating that date on which a state agency finally rejects a contested claim in the last step of its claim procedure is the date a claim accrues for purposes of MCL 600.6431(1)). Because December 22, 2018, is more than one year before April 15, 2020,

the date on which Maple Manor filed its notice of intent, Maple Manor's claim against DHHS is barred under the statute.

On appeal, Maple Manor argues that its claim accrued on April 15, 2019, the date that DHHS issued letters prospectively correcting its QAA and QMI taxes, and thus its claim is timely. Maple Manor misses, however, that the harm it alleges in its complaint—DHHS's determination that retroactive correction of the adverse QAA and QMI taxes would not be allowed—had already occurred by the time DHHS issued the corrections in April 2019. Indeed, Maple Manor's argument ignores that the accrual analysis requires a court to determine when a Maple Manor was "first" harmed. *Mays*, 506 Mich at 182.

Maple Manor also suggests that December 22, 2018 was not the date its claim accrued because it did not see the wrong calculation until the invoices were issued in January 2019. Even if the January 2019 date is used, the notice of intent was still untimely. This is because Maple Manor filed its notice of intent on April 15, 2020, meaning Maple Manor's claim must have accrued on or after April 15, 2019, in order to be timely. January 2019 is outside that one-year time period.

In sum, the Court of Claims did not err by granting summary disposition for DHHS under MCR 2.116(C)(7). Because summary disposition was proper, we do not consider Maple Manor's remaining substantive arguments related to the propriety of the QAA and QMI taxes.

Affirmed. Defendants may tax costs.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney