*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA WENDEL,

UNPUBLISHED
September 5, 2024

Plaintiff-Appellant,

v

No. 365678
Oakland Circuit Court

FORD MOTOR COMPANY,

LC No. 2022-195133-NI

Defendant-Appellee.

Before: GADOLA, C.J., and PATEL and YOUNG, JJ.

PER CURIAM.

In this action alleging breach of warranty, negligence, and gross negligence arising from an alleged defect in a vehicle, plaintiff, Patricia Wendel, appeals as of right the order granting summary disposition to defendant, Ford Motor Company ("Ford"), under MCR 2.116(C)(7) (statute of limitations). On appeal, Wendel contends: (1) there remained a question of fact whether the statute of limitations was tolled because of Wendel's insanity, which made the trial court's grant of summary disposition to Ford—and its denial of Wendel's associated request for leave to amend her complaint—improper; (2) Wendel's claim of breach of warranty was subject to a discovery rule of accrual and was timely filed; and (3) Ford's fraudulent concealment of Wendel's claim also tolled the statute of limitations. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This cause of action arises out of the events of an October 2018 accident involving Wendel's 2017 Ford Escape manufactured and sold by Ford. Wendel alleged that she exited her vehicle with the transmission in park when the vehicle began to roll and ran over her right leg. In June 2022, Ford recalled numerous models, including the 2017 Escape, for a defect in the "gear shifter cable bushing."

-1-

Wendel filed her complaint in July 2022. Explaining the delay in asserting the cause of action, Wendel stated, in relevant part:

9. Notwithstanding plaintiff's firm conviction that she had properly placed the transmission in park, the assumption of others was that it was all her fault and that she had simply failed to put transmission in park properly.

10. Finally, in June of 2022, plaintiff, through her family, became aware of a recall on her vehicle, revealing for the first time that there was a defect in the mechanical connections between the gear selection lever and the transmission, creating the potential for exactly what happened to plaintiff.

Wendel brought a claim of breach of implied warranty, arguing the alleged defect was a proximate cause of her injury. Wendel also brought a claim for negligence in the design, manufacture, or installation. Finally, Wendel brought a claim of gross negligence on the basis of Ford recklessly offering the vehicle for sale with knowledge of the defect. Wendel claimed damages for medical expenses, loss of earnings, and emotional distress.

Ford moved for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(8) (factual sufficiency), arguing that Wendel's claims constituted a products liability action, and were subject to a three-year statute of limitations from the date of the accident, which expired before Wendel filed her complaint. Ford further argued that Wendel failed to allege any facts establishing a tolling of the statute of limitations.

Wendel responded, arguing that she was entitled to tolling of the statute of limitations because of insanity, as statutorily defined.[1] Wendel contended that there remained a question for the trier of fact regarding the applicability of insanity tolling. The affidavits of Wendel's two sons with her deceased husband, Floyd Wendel, who died on January 2021, were attached to her response to the motion. Wendel's sons averred details about Floyd's battle with Alzheimer's disease, from 2016 through his death, during which time Wendel served as his caretaker. Wendel's sons described the stress Wendel was experiencing at this time and how this stress was detrimental to her mood, habits, mental acuity, and ability to care for herself and manage other aspects of her life.

Also attached to Wendel's response to the motion was a letter from Dr. Gerald A. Shiener, M.D., detailing his psychiatric evaluation of Wendel. Shiener found that Wendel was suffering from depression, and had been since before her accident. He also found that she had "persistent sleep disturbance," and her depression and injury resulted in "slowed thinking and difficulty recalling aspects of her history without referring to an assistive document." Shiener concluded that Wendel met the definition of insanity under MCL 600.5851 because she could not "comprehend[] rights [she] is otherwise bound to know."

---

[1] MCL 600.5851(2) defines "insane" as: "[A] condition of mental derangement such as to prevent the sufferer from comprehending rights he is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane."

Irrespective of the applicability of insanity tolling, Wendel argued that her breach of warranty claim accrued when she discovered the breach, at the time of the June 2022 recall, and so the statute of limitations had not expired. Finally, Wendel argued that the statute of limitations was tolled by Ford's fraudulent concealment of the defect.

Ford replied, arguing that the statute of limitations specific to breach of warranty claims was applicable to service contracts, and a different statute of limitations for product liability claims applied here. Ford next argued that Wendel had not supported her argument regarding insanity and tolling because she did not present facts constituting mental derangement at the time of the accident, and instead contended she had a firm conviction the accident, when it occurred, had not been her fault. Finally, Ford argued that Wendel failed to allege facts sufficient to support fraudulent concealment tolling.

On the same day, Wendel moved for leave to file an amended complaint "to conform with the facts of the case." The proposed amended complaint included the following addition:

12. Prior to October 18, 2018, and continuing still today, Plaintiff was and is, as defined by MCL 600.5851(2), suffering from a condition of mental derangement such as to prevent her from comprehending her rights she was otherwise bound to know, even though she was never judicially declared to be insane.

13. Because of Plaintiffs [sic] mental derangement described in paragraph 12 above, Plaintiff had one year after the disability was removed to bring this action.

Ford responded, arguing that leave should be denied because the proposed amendment would be futile. Ford contended that Wendel's proposed conclusions of insanity were rebutted by other information in her pleading concerning her "firm conviction" that she placed the car in park.

The trial court held a hearing on both motions, during which Ford added that Wendel's filing of her complaint immediately after learning of the recall directly contradicted her argument that she was unable to understand her rights because of mental derangement. Ford also argued that the affidavits of Wendel's sons and Shiener's evaluation did not provide evidence regarding Wendel's mental state at the time of and soon after the accident, as would be necessary to support insanity tolling. Wendel argued that the disability existed before the accident and continued to the present. Ford responded by noting that Wendel's original complaint alleged no facts to support insanity.

The trial court issued an opinion granting summary disposition. Regarding Wendel's argument for insanity tolling, the trial court reasoned:

Plaintiff did not allege any facts in the complaint indicating that she was insane. Further, this case was initiated by Plaintiff in her own capacity and not by a conservator or next friend [sic], which would have been required by MCR 2.201 if Plaintiff were incompetent when she filed the action. Plaintiff's claim of insanity was first raised in her response to Defendant's motion for summary disposition. Under these circumstances, the Court does not believe that Dr. Sheiner's [sic] opinion and the affidavits of Plaintiff's sons are sufficient to demonstrate a question of fact for the jury regarding Wendel's insanity.

-3-

Regarding the statute of limitations applicable to the breach of warranty claim, the trial court reasoned: "Plaintiff's breach of implied warranty claim seeking damages for personal injuries falls within the definition of a product liability claim. . . . Again, the undisputed facts show that Plaintiff did not bring the claim within three-year [sic] time period [for a product liability claim]." Finally, regarding Wendel's statute of limitations argument based on fraudulent concealment, the trial court reasoned: "Because Plaintiff's complaint does not allege acts or misrepresentations by Defendant that fraudulently concealed her claims, the statute of limitations was not tolled . . . ." On the same day, the trial court also entered an order denying Wendel's motion to amend her complaint "for the reasons stated in the response." This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition and consider the entire record to determine whether the moving party was entitled to summary disposition. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A motion under MCR 2.116(C)(7) is on the grounds of "release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." MCR 2.116(C)(7).[2]

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Conflicting evidence on an issue presents a question of fact for a jury. *Id*. at 605-606, 615. And when ruling on a motion for summary disposition, courts do not assess the credibility of witnesses. *White v Taylor Distrib Co, Inc*, 482 Mich 136, 142; 753 NW2d 591 (2008).

We review a trial court's decision on a motion for leave to amend pleadings for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997); *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). A court does not abuse its discretion if it selects an

---

[2] Plaintiff's motion for summary disposition was filed under MCR 2.116(C)(7) and (C)(8), but it was clearly granted on the grounds of an expired statute of limitations, under (C)(7), on all three counts.

outcome falling within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006); *In re Kostin*, 278 Mich App at 51.

## III. INSANITY TOLLING

We conclude that a question of fact exists concerning whether Wendel is entitled to insanity tolling under MCL 600.5851(2). The trial court therefore erred by granting Ford's motion for summary disposition. It relatedly abused its discretion by denying Wendel's motion for leave to amend her complaint.

MCL 600.5805 of the Revised Judicature Act of 1961, MCL 600.101 *et seq*., provides the statute of limitations in cases of injury to persons or property and states, in pertinent part:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

> (2) Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.

> \* \* \*

> (12) The period of limitations is 3 years for a products liability action. . . .

MCL 600.5827 further specifies:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in [MCL 600.]5829 to [MCL 600.]5838,[3] and in cases not covered by these sections the claim accrues at the time of the wrong upon which the claim is based was done regardless of the time when damage results.

The "time of the wrong upon which the claim is based" under MCL 600.5827 is "the date on which the defendant's breach harmed the plaintiff." *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 183; 931 NW2d 539 (2019).

MCL 600.5851 provides for tolling because of insanity or infancy, and states, in pertinent part:

---

[3] The referenced sections address accrual of the following specific claim types like the right of entry or recovery of possession of land (MCL 600.5829); mutual and open account current (MCL 600.5831); breach of warranty for quality or fitness (MCL 600.5833); common carriers, charges, overcharges (MCL 600.5834); life insurance, presumption of death (MCL 600.5835); installment contracts (MCL 600.5836); alimony (MCL 600.5837); and malpractice (MCL 600.5838).

(1) Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in MCL 600.5852.

(2) The term insane as employed in this chapter means *a condition of mental derangement such as to prevent the sufferer from comprehending rights he is otherwise bound to know* and is not dependent on whether or not the person has been judicially declared to be insane.

(3) To be considered a disability, the infancy or insanity *must exist at the time the claim accrues*. If the disability comes into existence after the claim has accrued, a court shall not recognize the disability under this section for the purpose of modifying the period of limitations.

\* \* \*

(5) A court shall recognize both of the disabilities of infancy or insanity that disable the person to whom the claim first accrues at the time the claim first accrues. A court shall count the year of grace provided in this section from the termination of the last disability to the person to whom the claim originally accrued that has continued from the time the claim accrued, whether this disability terminates because of the death of the person disabled or for some other reason. [Emphasis added.]

Although the burden of proof generally "rests on a defendant to establish all the facts necessary to show that the period of limitation has expired," when "it appears that the cause of action is prima facie barred," the burden of proof shifts to "the party seeking to enforce the cause of action to show facts taking the case out of the operation of the statute of limitations." *Warren Consol Sch v WR Grace & Co*, 205 Mich App 580, 583-84; 518 NW2d 508 (1994). When "no facts are in dispute, the court must decide as a matter of law" whether the plaintiff met that burden and "the claim is statutorily barred." *Asher v Exxon Co, USA*, 200 Mich App 635, 638; 504 NW2d 728 (1993).

Our Supreme Court has characterized the determination of eligibility for tolling by insanity as determining "whether the plaintiff had the ability, before commencement of the action outside the limitation period, to aid in pursuit of the claim against the objecting defendant." *Lemmerman v Fealk*, 449 Mich 56, 74; 534 NW2d 695 (1995). However, this Court has found whether a conservator or a guardian was appointed is irrelevant to the question of insanity under MCL 600.5851. *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 176; 577 NW2d 909 (1998). Accordingly, the trial court's focus on this fact was misplaced.

There is little binding caselaw interpreting MCL 600.5851(2). In *Asher*, this Court found that an employee, who claimed to experience some memory loss and difficulty in finding his way around his employer's plant because of exposure to a chemical manufactured by the defendant,

failed to establish he was suffering from "mental derangement" necessary to toll the statute of limitations. *Asher*, 200 Mich App at 641. In *Asher*, the plaintiff "admitted that at the time he first developed symptoms of illness in the late 1970s, he believed his symptoms were caused by chemicals he used at work." *Id*. The plaintiff was first exposed to the defendant's product in July of 1985, and this Court concluded that he had three years from this exposure date to file a claim. *Id*.

Rejecting the plaintiff's argument for insanity tolling, the Court reasoned "[n]one of the documentary evidence submitted by [the] plaintiff[] to the circuit court show any controversy with respect to whether [the] plaintiff was deranged at the time his claim accrued." *Id*. "Although the circuit court erred in finding that [the] plaintiff was not mentally deranged [merely] because he was able to work, the evidence presents no genuine issue of material fact regarding [the] plaintiff's sanity at the time his claim accrued." *Id*. (citations omitted). Notably, *Asher* provides the following factual summary relevant to this issue:

> [The p]laintiff initially avoided going to a doctor because he did not want to be placed on sick leave and suffer reduced income. Dr. Jerry Walker first treated plaintiff in December of 1979 for chronic rhinitis, anxiety, boils, and breathing difficulty. Walker diagnosed that these conditions were caused by [the] plaintiff's exposure to chemicals at his workplace.
>
> During the 1980s, [the] plaintiff began to experience memory loss, difficulty finding his way around the General Motors plant, and chronic lethargy. Plaintiff failed to heed Walker's advice to find a different job. In May of 1987, Walker declared plaintiff permanently disabled. [*Id*. at 637.]

Accordingly, the Court determined that alleged memory loss and related symptoms that ultimately left the plaintiff permanently disabled before the statute of limitations expired were insufficient to create a factual dispute that the plaintiff was mentally deranged and entitled to insanity tolling.

Here, Wendel had to produce evidence supporting that she was suffering from "a condition of mental derangement such as to prevent the sufferer from comprehending rights [s]he is otherwise bound to know," MCL 600.5851(2), when the alleged defect in her car harmed her, MCL 600.5827; *Bauserman*, 503 Mich at 183. Wendel's sons averred that at this time Wendel was worried, isolated, forgetful, depressed, often disoriented, emotional, imprudent with her finances, and that these characteristics comprised a personality they did not recognize in her. They said the stress as caregiver for Floyd, whose condition was deteriorating, caused Wendel to become obsessed and regularly forego sleep. And they said her situation substantially worsened after the injury at issue occurred when she became "overwhelmed" about Floyd's condition, her ability to care for him, and her own injury. Wendel's sons also averred Wendel "had no ability to take stock of her important or even routine affairs and take care of herself without significant assistance from the rest of us," and "was totally focused on dealing with [Floyd] and had no concern or ability to focus on anything else."

Shiener stated:

Mrs. Wendel's preexisting depressive condition in conjunction with the head injury that she sustained has also caused a neurocognitive disturbance. Her slowed thinking and difficulty recalling aspects of her history without referring to an assistive document (her cell phone record calendar and lists of medications) indicates an impairment in her ability to think clearly, remember, take in information and process it and act on it in a consensually validated way.

Shiener reported that Wendel had "persistent sleep disturbance since the accident," and was "significantly traumatized" by the accident. Shiener also cited as a reason to question Wendel's ability to comprehend her rights that "her existence and management in her home has been supplemented by nursing care or by the attendant care provided by her daughter-in-law." He stated that Wendel was under the care of a psychiatrist for caregiver stress-related depression before her accident, and was treated with antidepressant medication. Shiener concluded that Wendel met the MCL 600.5851 definition of insanity.

We acknowledge that Shiener's expertise does not extend to this ultimate legal question of Wendel's insanity under MCL 600.5851. See *Maiden v Rozwood*, 461 Mich 109, 129 n 11; 597 NW2d 817 (1999) ("The opinion of an expert does not extend to legal conclusions."). Again, the question is whether Wendel could "comprehend her rights [she was] otherwise bound to know." MCL 600.5851(2). We conclude that Wendel's evidence established a question of fact regarding whether she suffered from mental derangement such as to prevent comprehending rights she was otherwise bound to know. Wendel's sons and Shiener made statements regarding stress, depression, forgetfulness, and slowed thinking in day-to-day activities. This alone may be insufficient to create a question of fact regarding insanity tolling. See *Asher*, 200 Mich App at 641.

But the evidence also shows that Wendel had no ability to focus on anything but her husband's care and was no longer able to manage her life independently around the time of her injury. This included neglecting her personal grooming and other daily responsibilities like managing her finances. She required significant assistance with daily life after the accident. In our view, these additional circumstances create a question of fact concerning insanity tolling. Importantly, if Wendel's mental condition was serious enough to completely prohibit her from independently managing the basics of daily life, including relatively simple tasks like personal grooming, it follows that she would also not comprehend rights she was otherwise bound to know.

We acknowledge the following statement from Wendel's complaint: "Notwithstanding plaintiff's firm conviction that she had properly placed the transmission in park, the assumption of others was that it was all her fault and that she had simply failed to put [the] transmission in park properly." Wendel's ability to recall the transmission placement may cut against her insanity and may instead evidence that Wendel only delayed filing suit because she was dissuaded by others, not because she was insane. However, this conflicts with the evidence already discussed, and resolution of this conflict is an issue for a trier of fact. See *Turkelson*, 322 Mich App at 605-606, 615.

Because a question of fact existed regarding insanity tolling, we relatedly conclude that the trial court abused its discretion by denying Wendel's motion for leave to amend her complaint. MCR 2.118 governs the amendment of pleadings. Our Supreme Court has stated this rule was

"designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973) (quotation marks and citation omitted). A plaintiff may amend their complaint once as a matter of course within 14 days after being served with a responsive pleading by an adverse party. MCR 2.118(A)(1); *Ligons v Crittenton Hosp*, 490 Mich 61, 80; 803 NW2d 271 (2011). Thereafter, a plaintiff may amend their complaint only by leave of the court or by written consent of the adverse party. MCR 2.118(A)(2).

Our Supreme Court has stated amendment is generally a matter of right rather than grace. *Ben P Fyke & Sons*, 390 Mich at 659. Accordingly, "[l]eave shall be freely given when justice so requires." MCR 2.118(A)(2); see also MCL 600.2301 (stating courts have the "power to amend any process, pleading or proceeding . . . for the furtherance of justice"). A motion to amend should ordinarily be denied only for particularized reasons. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). In making its decision, the trial court may not let its view of the merits of the case affect its decision. *PT Today*, *Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 144 n 17; 715 NW2d 398 (2006). The judge may not substitute their personal view of justice for the public policies reflected in statutes, common law, and court rules; that is, the judge may not deny leave on the basis of a personal view that the claim or defense is disfavored. *Ben P Fyke & Sons*, 390 Mich at 659-660.

Reasons justifying denial of leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility. *Weymers*, 454 Mich at 658. A trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile. *PT Today*, 270 Mich App at 143. Here, the trial court denied Wendel leave to amend her complaint "for the reasons stated in the response." Those reasons were futility, and that Wendel's undue delay would prejudice Ford.

Delay, standing alone, is insufficient to warrant denying leave to amend. *Ben P Fyke & Sons*, 390 Mich at 663-664. Rather, there must be evidence the delay was in bad faith or caused actual prejudice. *Id*. at 663. Indeed, "there must always be some delay associated" with a request for leave to amend. *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 321; 503 NW2d 758 (1993). And even when the trial court determines a delay is inexcusable, the remedy is not to deny leave to amend. Rather, "the remedy is to sanction the offending party to reimburse the opponent for the additional expenses and attorney fees incurred" as a result of the unexcused delay. *Id*., citing MCR 2.118(A)(3).

Prejudice, in the context of a motion for leave to amend, does not "mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits." *Weymers*, 454 Mich at 659. Rather, it is the prejudice that arises when the amendment would prevent a defendant from having a fair trial. *Ben P Fyke & Sons*, 390 Mich at 657-658. This may occur when "important witnesses have died or necessary evidence has been lost or destroyed." *Weymers*, 454 Mich at 659. Prejudice might arise when:

> the moving party seeks to add a new claim or a new theory of recovery on the basis
> of the same set of facts, after discovery is closed, just before trial, and the opposing

party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id*. at 659-660.]

Given the foregoing, it was improper to deny Wendel's motion because of delay. Nothing in the record shows that Wendel's request, which did not occur on the eve of trial and sought amendments related only to the insanity-tolling issue already raised in responding to Ford's motion for summary disposition, would be prejudicial. And Ford only argues on appeal that the trial court did not abuse its discretion "in holding that amendment could be futile."[4]

"An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 484; 986 NW2d 427 (2022). "A proposed amendment is also futile if summary disposition would be appropriately granted regarding the new claims, either when a party has not established a genuine issue of material fact regarding an element, or when the undisputed facts establish that summary disposition would be appropriate." *Id*. (citations omitted). Because futility is an adequate reason to deny amendment, *Weymers*, 454 Mich at 658, or affirm such denial even if it is improperly made on other grounds, *PT Today*, 270 Mich App at 143, we now address the question of futility.

Wendel's proposed amendment added only legal conclusions concerning Wendel falling under the definition of insanity in MCL 600.5851(2), and the tolling applicable to Wendel in MCL 600.5851(1). As discussed, Wendel established a question of fact regarding insanity tolling. Her proposed amendment therefore was not futile. To the extent the trial court denied the amendment on this basis, the court abused its discretion.

## IV. DISCOVERY RULE ACCRUAL

To the extent the trial court declined to apply a discovery rule because Wendel's claim did not actually implicate breach of warranty, this was proper. Nevertheless—setting aside that a question of fact exists concerning insanity tolling—Wendel's claim was untimely even applying the discovery rule for breach of warranty claims. This is because the claim accrued at the time of the accident.

MCL 600.5833 states, "In actions for damages based on breach of a warranty of quality or fitness the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered." Under Michigan law, an accrual "discovery rule" cannot be implied, but must be expressly provided by statute, *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 391-392; 738 NW2d 664 (2007), as it is for the statute of limitations for breach of warranty claims in MCL 600.5833. Because this discovery rule provides for accrual when the breach is discovered *or* reasonably should be discovered, it includes a subjective and objective component. See *Bowman v St Johns Hosp & Med Ctr*, 508 Mich 320, 340; 972 NW2d 812 (2021) ("Th[e common-law discovery] rule has a subjective component ('when the plaintiff discovers') and an objective

---

[4] Even were there inexcusable delay, the court should have sanctioned plaintiff rather than deny her requested amendment.

-10-

component ('when the plaintiff . . . , through the exercise of reasonable diligence, should have discovered').") (omission in original; citation omitted).

As stated, MCL 600.5805(1) provides that "[a] person shall not bring or maintain an action to recover damages for injuries to persons or property unless, *after the claim first accrued* . . . , the action is commenced within the periods of time prescribed by this section." (Emphasis added.) See also MCL 600.5827 ("Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues."). MCL 600.5805(12) states, "The period of limitations is 3 years for a products liability action." MCL 600.5827 further specifies that "[t]he claim accrues at the time provided in [MCL 600.]5829 to [MCL 600.]5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." The "time of the wrong upon which the claim is based" under MCL 600.5827 is "the date on which the defendant's breach harmed the plaintiff." *Bauserman*, 503 Mich at 183.

Accordingly, while the period of limitations for a breach of warranty claim begins when the breach is or should be discovered, the period for other unlisted claims begins when the plaintiff is harmed, regardless of discovery of any breach or other conduct giving rise to the damage. With this in mind, we now address whether MCL 600.5833's discovery rule applies here.

As an initial matter, we acknowledge that breach of warranty is a specific type of claim asserted within a products liability action. See *Clark v Seagrave Fire Apparatus, Inc*, 170 Mich App 147, 158; 427 NW2d 913 (1988) ("Negligence and breach of implied warranty are separate and distinct theories of recovery in products liability."), citing *Smith v E R Squibb & Sons, Inc*, 405 Mich 79, 89; 273 NW2d 476 (1979). But because the Legislature has provided a separate accrual rule for the subset of breach of warranty claims distinct from that applicable to product liability claims generally, we must determine which applies here.

There is little binding caselaw interpreting MCL 600.5833. In *Frommert v Bobson Constr Co*, 219 Mich App 735, 740; 558 NW2d 239 (1996), this Court found the statute imposed a discovery rule on warranty claims involving service contracts. Applying the discovery rule, this Court found the earliest date a business owner's breach of warranty claim against a roofing contractor accrued was when the first leak of a new roof occurred. *Id*.

While Wendel presents her claims as one of breach of warranty, "a court is not bound by a party's choice of labels," instead "determin[ing] the gravamen of a party's claim by reviewing the entire claim." *Attorney General v Merck Sharp & Dohme Corp*, 292 Mich App 1, 9-10; 807 NW2d 343 (2011). The Revised Judicature Act defines a "product liability action" as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production[5] of a product."

---

[5] "Production" is defined as "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." MCL 600.2945(i).

MCL 600.2945(h); see *Merck Sharp & Dohme Corp*, 292 Mich App at 9-11, 14 (fraud claim qualified as a "product liability action").

In her breach of implied warranty claim, Wendel alleged a defect in her vehicle was a proximate cause of her injury, fitting the MCL 600.2945(h) definition of a product liability claim. However, this does not eliminate the possibility that the claim is also a breach of warranty claim— which we already clarified is a subset of products liability—subjecting the claim to the discovery rule under MCL 600.5833. To answer this question, we find our Supreme Court's opinion in *Southgate Community Sch Dist v West Side Constr Co*, 399 Mich 72; 247 NW2d 884 (1976), instructive. While there were insufficient facts in the record to resolve when the plaintiff's claim accrued, the Court provided the following legal principle analogous to this case:

> In a products liability action, where there has been no sudden injury to person or property and where the gravamen of the complaint is the deterioration over a period of time of the product itself, the claim accrues when plaintiff discovers or reasonably should have knowledge of the manufacturer's breach of warranty. [*Id.* at 82.]

Thus, while not explicit, the Court indicated that breach of warranty claims subject to the discovery rule involve deterioration of a product over time and are distinct from cases involving sudden injury to a person or property. And this distinction makes logical sense in the context of claim accrual. Cases involving deterioration of a product over time support a more forgiving accrual rule because the harm is less readily apparent and may only be discovered after some time. In contrast, when a product causes sudden injury, as occurred here, the harm is much more apparent and thus indicative of a potential cause of action. For the foregoing reasons, Wendel's claim was properly construed as sounding generally in products liability and not subject to the discovery rule for the subset of breach of warranty claims under MCL 600.5833.

Even assuming that the discovery rule applies, Wendel's claim was filed more than three years after it accrued. Wendel contends that because MCL 600.5838(2), dealing with medical malpractice claims,[6] sets a discovery rule like that set in MCL 600.5833 for breach of warranty claims, medical malpractice caselaw can be looked at for analogy when binding breach of warranty caselaw is lacking. Wendel offers *Bowman*, 508 Mich 320, to illustrate that our Supreme Court

---

[6] MCL 600.5838(2) states:

> Except as otherwise provided in [MCL 600.]5838a or [MCL 600.]5838b, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in [MCL 600.]5805 or [MCL 600.]5851 to [MCL 600.]5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The plaintiff has the burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim. A malpractice action that is not commenced within the time prescribed by this subsection is barred. [MCL 600.5838(2).]

utilizes a subjective standard when assessing a plaintiff's diligence in attempting to discover a possible *medical malpractice* claim.

However, *Bowman* explicitly noted that the common-law discovery rule, which had similar language to the statutory discovery rule at issue in that case and here, includes a subjective *and* objective component. *Id*. at 340. The Court said the matter at issue concerned "the diligence in responding to suspicion about the cause of injury," noting that "[t]his . . . type of diligence concerns only the [common-law] rule's objective component." *Id*. at 340-341. The Court then went on to discuss what this diligence requires, i.e., when a plaintiff should have discovered a potential cause of action, in the specific context of medical malpractice cases.

The *Bowman* Court stated that a plaintiff " 'should have discovered' a possible cause of action when [he or] she learned facts from which [he or] she could have inferred, without speculation or conjecture, that an earlier professional might have committed malpractice." *Id*. at 341. However, when "the facts compel an inference of an injury's possible cause, diligence has little role to play in evaluating whether a plaintiff should have discovered a possible cause of action. When the facts don't compel an inference of a possible cause but do arouse suspicion, we require diligence." *Id*.; see also *id*. at 342 (courts must address "whether the facts should arouse [the plaintiff's] suspicion and thus trigger [a] duty to investigate . . . .").

Under an appropriate "flexible, fact-specific inquiry, fueled by common sense and reason," "facts arouse suspicion when they make a plaintiff wonder whether the defendant is responsible." *Id*. at 342 (quotation marks and citation omitted). "The facts that arouse the plaintiff's suspicions will vary from case to case." *Id*. (quotation marks and citations omitted). This variance can be on the basis of "a plaintiff's special knowledge," "what the patient learns and reasonably understands from her doctors," a plaintiff's "own observations of physical discomfort and appearance, [their] familiarity with the condition through past experience or otherwise, and [their] physician's explanations of possible causes or diagnoses of [the] condition." *Id*.

In assessing the applicability of *Bowman* to the instant case, it is important to note our Supreme Court's indication it sought to clear up "confusion . . . in medical-malpractice cases" with the opinion. *Id*. at 341. The *Bowman* Court explicitly noted that determining whether a possible medical malpractice claim exists is difficult because "patients are not doctors." *Id*. at 343. Thus, although *Bowman* provides for a fact-specific inquiry to determine whether a plaintiff should have discovered a possible medical malpractice claim, it does not mandate a strictly objective analysis here. The Court said this inquiry is particularly challenging because of the complicated nature of malpractice injuries, and it explicitly noted, at least in terms of the old common law rule, that whether a plaintiff should have discovered with reasonable diligence a possible cause of action is an objective question.

Accordingly, where the statute here provides for accrual when a breach *reasonably* should be discovered, we ask when Wendel objectively should have done so under the facts of this case. Thus, while the particular circumstances remain relevant, a plaintiff's subjective view of those facts is not. See *Krohn v Home-Owners Ins Co*, 490 Mich 145, 159-160; 802 NW2d 281 (2011) (concluding that reasonable necessity under MCL 500.3107(1)(a) must be determined under an objective standard because the definitions of "reasonable" "evidence an absence of the personal sentiment, prejudice, and bias associated with a subjective point of view, which is 'based on an

individual's perceptions, feelings, or intentions' rather than the 'externally verifiable phenomena' associated with an objective viewpoint.").

Outside of the specific context of medical malpractice, our Supreme Court has held, "Where the discovery rule is found to be appropriate, a plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered . . . (1) an injury, and (2) the causal connection between [the] plaintiff's injury and the defendant's breach [of duty to the plaintiff]." *Lemmerman*, 449 Mich at 76 (quotation marks and citation omitted). Our Supreme Court has stated a plaintiff need only be aware of a "possible cause of action" to trigger the "should have discovered" start of the statute of limitations clock. *Moll v Abbott Laboratories, Atlanta, Inc*, 444 Mich 1, 23-24; 506 NW2d 816 (1993) (addressing a product liability action), abrogated in part by *Trentadue*, 479 Mich at 393 (eliminating the common law discovery doctrine in Michigan). "Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action. . . . It is not necessary that a party should know the details of the evidence by which to establish his cause of action." *Id*. at 24 (quotation marks and citations omitted); see also *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 78; 592 NW2d 112 (1999) ("It is not necessary that a plaintiff be able to prove each element of the cause of action before the period of limitation begins to run"). Rather, it "is enough that he knows a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means by which the law provides for prosecuting or preserving his claims." *Moll*, 444 Mich at 24.

Here, Wendel had a "firm conviction that she had properly placed the transmission in park"[7] before the accident, and having such a conviction would objectively "compel an inference" that a defect or malfunction in the car caused the car to roll and injure Wendel, *Bowman*, 508 Mich at 341, or else demonstrate knowledge of the injury and its potential cause via defect or malfunction, *Moll*, 444 Mich at 24. Like the observance of a leak from one's ceiling after the installation of a roof, *Frommert*, 219 Mich App at 740, no specialized knowledge of the workings of an automobile, diligent investigation, or recall notice from Ford were needed—if one is convinced they put an automobile in park but the car subsequently rolls, one cannot escape the inference the automobile did not function properly. Upon the event of the accident, Wendel "should have discovered a possible cause of action," *Bowman*, 508 Mich at 341; see also *Lemmerman*, 449 Mich at 76, starting the statute of limitations clock, *Moll*, 444 Mich at 23-24. In other words, whether a discovery rule applies to the claim because it is a breach of warranty claim, MCL 600.5833, or the default accrual "at the time the wrong upon which the claim is based was done" rule applies, MCL 600.5827, all of Wendel's claims accrued at the time of the accident.

---

[7] Although this evidence, as discussed, conflicts with the premise that Wendel did not understand her rights and prevents deciding the insanity-tolling issue as a matter of law, we find it relevant to this separate, objective inquiry. Specifically, setting aside Wendel's subjective view and whether her "firm conviction" precluded insanity tolling, her belief objectively supports that she reasonably should have discovered a possible cause of action at the time of injury.

-14-

Setting aside the error discussed earlier, the trial court correctly dismissed Wendel's claim as untimely.

## V.  FRAUDULENT CONCEALMENT TOLLING

Wendel did not plead allegations sufficient[8] to sustain her argument for tolling of the statute of limitations because of fraudulent concealment, and—again setting aside the error regarding insanity tolling—the trial court properly dismissed Wendel's claims as time-barred.

MCL 600.5855 states:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.  [MCL 600.5855.]

See also *Tice Estate v Tice*, 288 Mich App 665, 668; 795 NW2d 604 (2010).  Although Wendel's complaint alleged that "th[e] defect was well-known to Ford long before its belated recall," she never alleged, let alone with any supporting facts, any affirmative action by Ford designed to prevent discovery of a potential cause of action.  Rather, the record shows that Wendel's delay in filling suit either resulted from her personal struggles and mental health issues, others believing she was at fault, or a combination of these circumstances.

Further, fraudulent concealment that will postpone the operation of a statute must be concealment of the fact that the plaintiff has a cause of action, so if the plaintiff knows of the cause of action, there can be no concealment.  *Eschenbacher v Hier*, 363 Mich 676, 681; 110 NW2d 731 (1961); *Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 646-647; 692 NW2d 398 (2004).  To be sufficiently apprised of a cause of action, a plaintiff need only be aware of a possible cause of action; it is not necessary that the plaintiff know the details of the evidence supporting the claim.  *Doe*, 264 Mich App at 643, 647.  A plaintiff will be held to know what they ought to know by the exercise of ordinary diligence.  *Eschenbacher*, 363 Mich at 681-682.

Because this standard of awareness of a "possible cause of action," *Doe*, 264 Mich App at 647, mirrors that examined above regarding a discovery rule of accrual, further analysis is not necessary.  Wendel, who had a firm conviction she placed her vehicle in park, was compelled to infer that a defect in the vehicle caused the accident, and so was effectively aware of a possible

---

[8] We reiterate that when "it appears that the cause of action is prima facie barred," the burden of proof shifts to "the party seeking to enforce the cause of action to show facts taking the case out of the operation of the statute of limitations."  *Warren Consol Sch*, 205 Mich App at 580, 583-84.  Because Wendel filed her complaint outside the general 3-year limitations period at issue here, she had the burden to show facts establishing fraudulent concealment.

cause of action immediately after the accident. Because Ford could not conceal what Wendel was immediately aware of, *Eschenbacher*, 363 Mich at 681, there cannot be fraudulent concealment that tolled the statute of limitations under MCL 600.5855.

## VI. CONCLUSION

The trial court erred in determining as a matter of law that Wendel did not qualify as insane under the tolling provision of MCL 600.5851(2), so summary disposition was improper, as was the denial of Wendel's motion for leave to amend her complaint. However, the trial court was otherwise correct in finding that Wendel's claim for breach of warranty accrued at the time of the accident and was not subject to the discovery rule. Lastly, Wendel did not plead allegations sufficient to sustain her argument for tolling of the statute of limitations because of fraudulent concealment.

Reversed in part and remanded. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Adrienne N. Young

-16-